# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

LEGAL MAIL PROVIDED TO COLUMBIA CORRECTIONAL INSTITUTION ON 4/20/23 (DATE) FOR MAILING
STAFF INITIAL L.M. I/M INITIAL

**LUKENS MARTELUS**
Plaintiff,

V.

Case No. 3:23-cv-468-MMH-MCR
~~3:22-cv-874-BJD-JBT~~

E. PEREZ-LUGO, MD,
CCHP-Chief, CENTURION
MEDICAL GROUP, c/o
STEPHEN SCIBELLI, MD
JACKSON MEMORIAL
HOSPITAL
Defendant's,

2023 APR 24 PM 12:36
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA
FILED

## COMPLAINT FOR VIOLAION OF CIVIL RIGHTS

### BASIS FOR INVOKING JURISDICTION

under 42 U.S.C. § 1983 a petitioner may sue state or local officials for the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), A petitioner may sue federal officials for the violation of certain constitutional rights. The Petitioner contends that his 8th and 14th Amendment rights were violated by state or local officals.

1

## STATEMENT OF THE FACTS

The Plaintiff Lukens Martelus an inmate of the Florida penal system, initiated this action pro se by filing a complaint for the violation of civil rights, which was docketed on August 11, 2022 (Doc. 1). Plaintiff paid the full filing fee. See docket. In accordance with it's obligation under the Prison Litigation Reform Act (PLRA), the Court reviewed the sufficiency of the complaint. See 28 U.S.C. § 1915A(a), (b) (providing that a court must review a complaint by a prisoner against a governmental officer or employee and dismiss the complaint, or any portion of it, if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted") The Court found Plaintiff failed to state a plausible claim for relief against two of the three named Defendants Ricky Dixon, the Secretary of the Florida Department of Corrections (FDOC) and Christina Crews, the Assistant Warden of Columbia Correctional Institution (CCI) and, therefore, dismissed the claims against those Defendants, but directed Plaintiff to serve the remaining Defendant, Dr. Perez-Lugo. See Orders (Docs. 4, 5). At Plaintiff's request the Court granted him leave to amend his complaint. See Order (Doc. 12). Plaintiff filed an amended complaint (Doc. 15; Am. Compl.) with supporting documents (Doc. 15-1; Pl. Ex.) (medical and grievance records). Through a motion (Doc. 19), Plaintiff asks the Court to direct the U.S. Marshals

2

Service to serve the named Defendants and to place a lien on his prison account for the cost. Before addressing the motion, the Court had to assess the sufficiency of Plaintiff's amended complaint in accordance with its obligation under the PLRA.

In his amended complaint, Plaintiff names six Defendants, including the two previously dismissed: Dr. E. Perez-Lugo; Centurion Medical Group; an unnamed doctor identified solely as the Executive Medical Director, Secretary Dixon; Assistant Warden Crews, and S. Geiger, a health services administrator at CCI. See Am. Compl. at 2-4. Plaintiff alleges that on April 21, 2022 he was denied "specialized medical treatment to see a back surgeon." Id. at 6. The Plaintiff asserts had back surgery, and the back surgeon wanted to see him for follow-up treatment, but the Defendants, while acting in concert with one another, refused to follow the specialist recommendation's Id. Plaintiff contends he has suffered ongoing back degeneration because a medical official without specialized training was making decisions about his continuing treatment. Id. As relief, he seeks compensatory damages and to be evaluated by a back specialist or sent back to the surgeon, Dr. Scibelli, at Jackson Memorial Hospital. Id. In support of his allegations, Plaintiff incorporates

3

by reference the attached medical and grievance records. See id. In his grievance records, Plaintiff indicates he had been treated by doctors for about ten years, but his back surgery had caused major damage, which he attributed to the incompetence of medical staff. See Pl. Ex. at 7-8, 13. On April 21, 2022, Plaintiff treated with Dr. Scibelli, a neurosurgeon, who noted Plaintiff has had multiple surgeries on his spine. Id. at 3. Dr. Scibelli recommended Plaintiff have a follow-up MRI and CT scan. Id. Plaintiff filed a formal grievance on April 26, 2022 complaining about his appointment with Dr. Scibelli. Id. at 5. While unclear, it appears Dr. Scibelli had been telling Plaintiff the MRI and CT scan could not be completed until Dr. Scibelli received authorization from the prison, but it turned out, the authorization was there all the time, and Dr. Scibelli was giving Plaintiff the runaround. Id. Plaintiff accused Dr. Scibelli of preventing him from receiving the treatment he deserved. Id. Defendants Dr. Perez-Lugo and Assistant Warden Crews responded to Plaintiff's grievance informing him he would have a follow-up with the provider to discuss a treatment plan once his medical records from his recent appointment had been sent to the prison. Id. at 6. They informed Plaintiff it was the responsibility of the specialist to determine the

4

appropriate treatment regimen for his condition and that any questions about his treatment plan should be addressed through sick call. Id. Plaintiff appealed the grievance response from Dr. Perez-Lugo and Assistant Warden Crews, saying that an orthopedic specialist should determine an appropriate treatment plan for him. Id. at 16. Plaintiff requested that he be scheduled with a physician at the Reception and Medical Center. Id. In denying his appeal, the grievance responder noted he had been seen by a physician on June 22, 2012. Id. at 17. The physician that treated the Plaintiff on June 22, 2022 was Defendant Dr. Perez-Lugo. Id. at 1. Dr. Perez-Lugo noted Plaintiff had been in constant pain, which he had discussed with another doctor. Id. An MRI and CT scan had been ordered and were to be sent to Dr. Scibelli for Plaintiff's follow-up. Id. Plaintiff had the MRI in July 2022. See id. at 20. There was a lengthy delay in sending the results of the MRI and CT scan to Dr. Scibelli. See id. On October 10, 2022, Plaintiff complained that he had two appointments with Dr. Scibelli but he was unable to receive treatment because the results of his MRI and CT scan had not yet been sent to the doctor. Id. The responding official noted that several attempts had been made to request a disc of the scans but the scans had not yet been received. Id. Plaintiff's appointment

5

with the specialist had been rescheduled. Id. On October 12, 2022, Plaintiff complained again about the delay in sending his medical records to the specialist. Id. at 19. The responding official noted the MRI disc had been requested and a new appointment had been scheduled. Id. On October 25, 2022, Plaintiff appealed the grievance response, complaining that his back pain continued to get worse and prison officials were deliberately indifferent to his serious medical needs. Id. at 23. He asserts the medical staff was not competent to examine or to refer him to others who can help. Id. In noting Plaintiff had been seen by a medical provider on November 3, 2022, the responding official denied his appeal on November 8, 2022. Id. at 22.

On November 30, 2022, Plaintiff filed an informal grievance to medical noting that he told Defendant S. Geiger the prior day he had been experiencing "excruciating pain" and asked to see a specialist. Id. Apparently, the specialist still had not received the disk of Plaintiff's scans. Id. S. Geiger responded, noting a consult request was submitted on November 3, 2022 and the consult had been approved and was awaiting scheduling. Id. at 24.

## COMPLAINT ALLEGATIONS
## DELIBERATE INDIFFERENCE
## INTENTIONAL DISREGARD OF
## KNOWN OBJECTIVELY SERIOUS
## MEDICAL CONDITION THAT
## POSES AN EXCESSIVE RISK TO
## PLAINTIFFS HEALTH IN
## VIOLATION OF PLAINTIFFS
## EIGHTH AMENDMENT RIGHTS

Plaintiff Lukens Martelus asserts that Dr. E. Perez-Lugo and Dr. Stephen Scibelli displayed Deliberate Indifference concerning his health and safety preventing him from receiving the adequate treatment he needed for an excrutiatingly painful and rapidly deteriorating back problem attributed to his last back surgery. The record reflects that both Dr. Scibelli and Dr. Perez-Lugo were informed by the plaintiff of excruciating pain in his back and acknowledged the Plaintiffs complaint by refering him to be scheduled for MRI and CT scans for follow-up treatment. Dr. Scibelli noted that plaintiff has had multiple surgeries on his spine and recommended Plaintiff have a follow-up MRI and CT scan. Dr. Perez-Lugo noted Plaintiff had been in constant pain which he discussed with another doctor, an MRI and CT scan had been ordered and were to be sent to Dr. Scibelli for Plaintiffs follow-up treatment. This demonstrates that Dr. Scibelli and Dr. Perez-Lugo had

7

actual knowledge of Plaintiffs condition. Deliberate indifference can be established by inference from circumstantial evidence, including evidence that the risk was so obvious that a jury may reasonably infer actual knowledge on the part of the defendants. Hall v. Bennett, 379 F.3d 462, 464 (7th Cir. 2004). The record would also reflect the Plaintiff filing numerous grievances complaining about the continuous delays and continued rescheduling of the plaintiffs appointments to see Dr. Scibelli for follow-up treatment. Dr. Scibelli ordered the MRI and CT scans which was to be conducted at Columbia Correctional Institution where the Plaintiff was held in custody and Dr. Perez-Lugo was employed as a physician, the scans were done in July of 2022 in which Dr. Perez-Lugo was responsible for sending the scans back to Dr. Scibelli for the Plaintiffs follow-up treatment, but the follow-up treatment could not happen until Dr. Perez-Lugo takes the initiative to send the results of the scans to Dr. Scibelli so he can conduct the follow-up treatment. Which led the plaintiff to believe he was getting the runaround by Dr. Perez-Lugo because the plaintiff continuously informed Dr. Perez-Lugo and all medical staff at Columbia Correctional Institution of the excruciating back pain he was experiencing with each delay and rescheduling of the plaintiffs follow-up treatment. The record reflects from July

8

to November the Plaintiff was continuously rescheduled and that he filed numerous grievances voicing his frustration of Dr. Perez-Lugo's lack of initiative in expediting the MRI and CT scans to Dr. Scibelli for his follow-up treatment. If a treatment is necessary to treat a medical condition, a defendant cannot escape Eighth Amendment liability by providing Plainly ineffective alternative treatments. Sundstrom v. Frank, 2007 U.S. Dist Lexis 76,597 (E.D. Wis.) (citing Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2000) The Plaintiff filed a grievance on Dr. Perez-Lugo asserting he was making decisions about his back problems and treatment without specialized training, in which was denied. These events led the Plaintiff to believe he was being given the runaround by Dr. Perez-Lugo who displayed blatant professional disregard for the Plaintiff's health and safety in the face of obvious risk displaying Deliberate Indifference in his lack of effort to expedite the MRI and CT scans to Dr. Scibelli as ordered, which continued to cause the plaintiff excruciating pain each day left untreated. Delaying medical treatment may constitute deliberate indifference, depending on the seriousness of the condition and ease of providing treatment. Even a few days delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference. Smith v. Knox

9

County Jail, 666 F.3d 1037, 1040 (7th Cir. 2012). A delay in treating non-life threatening but painful conditions may constitute diliberate indifference, if the delay exacerbated the injury or unecessarily prolonged inmates pain. Arnette v. Webster, 658 F.3d 763, 779 (7th Cir 2008).

The Plaintiff contends that Dr. Perez-Lugo felt like his treatment plan was better suited for the Plaintiff then the follow-up treatment ordered by Dr. Scibelli, which shows in his lack of effort in expediting the MRI and CT scans to Dr. Scibelli, displaying professional disregard and diliberate indifference.

The Plaintiff further asserts that Dr. Scibelli display professial disregard and deliberate indifference by continuing to allow the constant rescheduling of Plaintiffs follow-up treatment. Dr. Scibelli has the authority to prevent the delays and rescheduling with one phone call to Dr. Perez-Lugo asking what is the problem with getting the results of the MRI and CT scans, I need those scans A.S.A.P.!!! But he did not do so knowing the Plaintiff was suffering excruciating back pain everyday during the continued rescheduling show his indifference toward the Plaintiffs health and well being.

It is clear that defendant's Dr. E. Perez-Lugo and Dr. Stepen Scibelli was aware of the risk of serious harm to the Plaintiff because of the continued rescheduling of the Plaintiffs

10

follow-up treatment and disregarded that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 847, 114 S. Ct 1970 (1994). The plaintiff also present to this Honorable Court that the Defendant E. Perez-Lugo is no longer employed as a physician at Columbia Correctional Institution.

### RELIEF SOUGHT

The Plaintiff is requesting injunctive relief and prays this Honorable Court direct FDOC to send the plaintiff back to Jacksonville Memorial Hospital and honor the order given by Defendant Dr. Stephen Scibelli to undergo follow-up treatment for his chronic back issues. The Plaintiff also prays this Honorable Court grant him $300,000 from each defendant in punitive damages for his pain and suffering mental stress and anguish as a result of the professional disregard and deliberate indifference displayed by defendants Dr. E. Perez-Lugo and Dr. Stephen Scibelli, concerning Plaintiffs health and safety, violating the Plaintiffs eighth amendment rights. Prison physicians will be liable under the eighth amendment if they intentionally disregard a known, objectively serious medical condition that poses an excessive risk to an inmates health Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994). A medical condition is deemed to be objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one

11

that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999), see also Jackson v. Illinois Medicar, Inc. 300 F.3d 760, 765 (7th Cir 2002

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

*Lukens Mortelus*
Lukens Mortelus
DC# L38463
Columbia Correctional Institution
216 SE Correction Way
Lake City FL. 32025

12